DARNEILLE *v.* GERACI, ET UX.

[No. 72, September Term, 1964.]

52

*Decided December 7, 1964.*
*Motion for rehearing filed December 21, 1964, denied January 4, 1965.*

The cause was argued before HENDERSON, C. J., and HAMMOND, HORNEY, SYBERT and OPPENHEIMER, JJ.

*Kenneth E. Pruden* and *George T. Burroughs,* with whom was *Wilmer D. Pyles* on the brief, for appellant.

*David Macdonald* for appellees.

HORNEY, J., delivered the opinion of the Court.

In this suit for specific performance, the questions on appeal are whether it was error to allow the seller a rehearing for the purpose of asserting a new and different defense after the entry of a decree granting specific performance; and, assuming the rehearing was proper, whether it was error to deny specific performance when the purchaser offered to pay the balance of the purchase money into court.

In the fall of 1962, Joseph A. Darneille (the purchaser or plaintiff) and Joseph A. Geraci and his wife (the sellers or defendants), following an extended period of negotiations, entered into a contract of sale wherein the defendants agreed to sell, and the plaintiff agreed to buy, a 120-acre tract of land or farm in Prince George's County underlaid by a valuable deposit of sand and gravel. The contract provided for a total purchase price of $250,000, of which $5,000 was paid as a down payment. An additional cash payment of $45,000 was to be paid at the time of settlement and the balance of $200,000 was to be secured by a mortgage or deed of trust payable in sixteen semi-annual installments in an amount which was not specified in the space left therefor in the contract, but which, by a simple arithmetical calculation, would be $12,500, or more. At the time of settlement ten acres were to be released to the purchaser. The contract further provided for the release of additional acreage from the lien of the mortgage upon the payment of $2,000 per acre. The property was sold subject to the right of ingress

to and egress from a reserved cemetery partially surrounded by the tract and the rights of adjoining owners to draw water from a spring on the farm. Neither of the easements could be located from the description thereof in the chain of title to the tract.

At the request of the sellers, the settlement date was postponed twice, but when it became obvious, after repeated requests for settlement, that the sellers were unwilling to go through with the contract, the purchaser filed suit, alleging, among other things, that although he was able, ready and willing to perform the contract entered into in good faith, the sellers had consistently failed and refused to make settlement.

In answer to the bill of complaint for specific performance and damages, the defendants, alleging that they had informed the plaintiff they would not sell the land to anyone for the purpose of excavating sand and gravel, claimed that they were induced to enter into the contract by fraud, misrepresentation and sharp practice in that the plaintiff had stated that he intended to use the tract for a residential subdivision when in fact he had sought to purchase it for resale to an excavator of sand and gravel.

After taking testimony at the initial hearing only on the issue of fraud, the court decreed specific performance and directed the sellers, upon compliance with the terms of the contract of sale, to execute and deliver a deed to the purchaser. However, within the thirty day period before the decree would have become enrolled, the chancellor, upon the petition of the defendants, granted a rehearing on the merits and allowed them to amend that part of their answer alleging fraud to an allegation that the contract of sale was too indefinite, uncertain and ambiguous to be specifically enforced.

At the rehearing, after taking additional testimony concerning the substituted defense, the plaintiff offered to pay the balance of the purchase money of $245,000 into court and to waive any defects in the title pertaining to the rights of others in and to the cemetery and spring. The chancellor, however, concluded that the terms of the mortgage for which the contract provided were so uncertain and vague as to be incapable of being enforced, and held that the offer to "pay all cash [was] an

attempt to avoid an unenforceable mortgage." Other uncertainties were found to exist with respect to the location of the ten acres to be released at the time of settlement as well as the additional acreage to be released upon payment therefor at the rate of $2,000 per acre. Apparently the spring was never located or had dried up, but the contractual provisions concerning the easement others had to go in and out of the cemetery was also held to be ambiguous and uncertain. A decree denying specific performance was entered, and this appeal followed.

We shall assume for the purposes of this case that the granting of a rehearing and the allowance of an amendment to the answer substituting a new and different defense for the initial defense interposed by the defendants were not improper, and proceed to decide the remaining question as to whether it was error to deny specific performance where the contract of sale did not specifically require the execution of a mortgage for the balance of the purchase price. We think the chancellor should have required the sellers to execute and deliver a deed to the purchaser upon payment into court of the sum of $245,000.

The principal part of the contract of sale claimed to be so indefinite as to be incapable of being specifically enforced states that "the balance of [the] deferred purchase money is to be secured by a mortgage * * * to be paid in eight years installments of sixteen equal payments semi-annually [of] ........ Dollars ($........), or more, * * *." Contending that a mortgage was required and that the words "or more" allowed payment of the mortgage in more than sixteen semi-annual payments over an indefinite period, the defendants claim that a mortgage which has an uncertain maturity date is unenforceable and that specific performance was properly denied. We do not agree that the words "or more" had the effect ascribed to them by the defendants. Rather, it seems to us that they were intended to allow the purchaser to pay the mortgage debt in less than sixteen installments or, if he desired, to pay the whole debt (or the balance of it) on any installment date he might choose within an eight year period. There was therefore never any necessity for the execution of a mortgage in this case should the purchaser choose, as he did, to pay the balance of the purchase price in cash at the time of settlement. Cf. *Gibbs v. Mere-*

*dith,* 187 Md. 566, 51 A. 2d 77 (1947), where, although the contract of sale provided for cash and a first and second mortgage, the sale was held to be a cash sale and the amount of the mortgage was therefore immaterial. See also *Caplan v. Buckner,* 123 Md. 590, 91 Atl. 481 (1914), where it was held that the absence of the time in which a mortgage was to be made payable did not render the terms of the contract too indefinite to be enforced. The case of *Haire v. Patterson,* 386 P. 2d 953 (Wash. 1963), is directly in point here. In that case, where the contract for the sale of land (encumbered with oil and gas leases and an easement) called for a down payment of $5,000 and $150 or more per month plus interest until the balance of $15,000 was paid, it was held that the contract had the ingredients of a cash sale, and that the purchaser had the option of paying the full consideration in cash and accepting a deed for the property subject only to the leases and easement.

As the giving of a mortgage was not specifically required by the terms of the contract of sale, the case of *Grooms v. Williams,* 227 Md. 165, 175 A. 2d 575 (1961), relied on by the defendants to support the contention that the denial of specific performance was proper, is distinguishable on the facts. In that case, where a basic term, the maximum amount of a first deed of trust, was not specified, it was held that the contract of sale was not specifically enforceable. In the case at bar, however, the fact that the plaintiff, who had a choice of performing the contract in either of two ways, elected to pay the balance of the purchase price into court in lieu of executing a mortgage therefor did not render the contract uncertain. *Quillen v. Kelley,* 216 Md. 396, 140 A. 2d 517 (1958). There was therefore no reason why specific performance should not have been granted. See *Baker v. Dawson,* 216 Md. 478, 487, 141 A. 2d 157 (1958); *Trotter v. Lewis,* 185 Md. 528, 535, 45 A. 2d 329 (1946). See also 5A *Corbin on Contracts,* § 1174; 49 Am. Jur., *Specific Performance,* § 23; *Restatement of Contracts,* § 370, comment d.

When, as here, it became clear that the sellers—by belatedly claiming that the contract of sale was too indefinite, uncertain and ambiguous to be specifically enforced—had no intention of going through with the sale in any event if that could be avoided,

the purchaser was thereby required either to accept the title as it was and tender payment into court or take the risk of possibly losing his suit for specific performance. *Chapman v. Thomas,* 211 Md. 102, 126 A. 2d 579 (1956). In such case, the general rule is to the effect that where uncertainties exist in the terms of a contract of sale, specific performance should be granted when cash is tendered in full payment of the purchase price. And where credit is provided for, as was the case here, it is the privilege of the purchaser, in the absence of some indication to the contrary, to waive all uncertainties relating to the extension of credit by tendering the whole (or balance) of the purchase price. Ordinarily, tender not only waives all defects or uncertainties in the terms of credit, but also waives all other uncertain terms, when, as here, they were primarily for the benefit of the purchaser. In addition to *Haire v. Patterson, supra,* see *Blanton v. Williams,* 70 S. E. 2d 461 (Ga. 1952); *Levine v. Lafayette Bldg. Corp.,* 142 Atl. 441 (N. J. Ch. 1928); *Binns v. Smith,* 115 Atl. 69 (N. J. Ch. 1921); *Morris v. Ballard,* 16 F. 2d 175 (C.A. D.C. 1926). See also 5 *Williston on Contracts* (rev. ed.), § 1424.

The defendants also contend that the offer to pay $245,000 into court came too late. When, however, a purchaser is at all times able, ready and willing to perform, a tender before trial is not necessary where the seller has expressed his intention not to perform. See *Christian v. Johnson Construction Co.,* 161 Md. 87, 155 Atl. 181 (1931), where it was held that a tender is not necessary when it would have been futile. See also *Lissau v. Smith,* 215 Md. 538, 138 A. 2d 381 (1958); *Maughlin v. Perry,* 35 Md. 352 (1872); Pomeroy, *Specific Performance of Contracts* (3rd ed.), § 361. As to a tender being unnecessary if a seller repudiates a contract before suit or where it appears he would refuse a tender, see 49 Am. Jur., *op. cit.,* § 144.

> *Decree denying specific performance reversed and case remanded for reinstatement of decree granting specific performance upon payment into court of $245,-000; appellees to pay the costs.*